**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TERRANCE M. JONES | : | |
| | : | |
| Appellant | : | No. 1130 EDA 2016 |

Appeal from the Judgment of Sentence January 28, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008269-2013

BEFORE: BOWES, J., NICHOLS, J., and RANSOM, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 29, 2018**

Appellant Terrance M. Jones appeals from the judgment of sentence entered following a four-day jury trial and his convictions for possession of a firearm, carrying a firearm without a license, carrying a firearm in Philadelphia, possession of an instrument of crime, simple assault, and recklessly endangering another person.[1] He challenges whether his convictions were against the weight of the evidence. We affirm.

We adopt the facts and procedural history set forth in the trial court's opinion. **See** Trial Ct. Op., 3/22/17, at 1-5. Following his convictions, the court sentenced Appellant to an aggregate sentence of six-and-a-half to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105, 6106, 6108, 907, 2701, 2705, respectively.

seventeen years' imprisonment. Appellant timely filed a post-sentence motion challenging the weight of the evidence, which the court denied. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issue:

Was not the verdict of guilt against the weight of the evidence to the degree that such serious doubt is cast upon the validity of [Appellant's] conviction as to shock the conscience where, taking into consideration all the evidence presented at trial, there was exculpatory and contradictory evidence as to [Appellant's] actions and location at the time the complainant was shot, and also inculpatory evidence as to another party who had the opportunity and motivation to commit the shooting, and the evidence thereby failed to prove by sufficient weight that it was [Appellant] who shot the complainant or otherwise committed the crimes of which he was convicted?

Appellant's Brief at 3.

In support of his issue, Appellant contends that the complainant's identification of him as the culprit was suspect. Appellant's Brief at 16. Appellant labels the complainant's identification testimony as equivocal and incredible because the complainant was intoxicated. *Id.* at 16-17. He also accuses the complainant as predisposed to identifying him because of a prior incident in which Appellant purportedly threatened the complainant with a weapon. *Id.* at 17. Appellant also points out that no other witness testified he was the shooter. *Id.* at 18. Finally, Appellant references alibi testimony by defense witnesses that he was not present at the time of the shooting. *Id.*

Our standard of review is well-settled:

A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an

appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (quotation marks and citations omitted).

After careful review of the record, the parties' briefs, and the decision by the Honorable Diana Anhalt, we discern no abuse of discretion by the trial court. ***See*** Trial Ct. Op. at 5-7 (summarizing conflicting testimony). As the trial court accurately notes, credibility determinations and resolving contradicting testimony were for the jury. ***See id.***; ***accord Houser***, 18 A.3d at 1135-36.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/18

- 3 -

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
CRIMINAL DIVISION TRIAL

**FILED**

MAR 2 2 2016

Criminal Appeals Unit
First Judicial District of PA

| COMMONWEALTH | : | NO.: CP-51-CR-0008269-2013 |
|---|---|---|
| OF PENNSYLVANIA | : | |
| | : | |
| v. | : | **Superior Court No.:** |
| | : | **1130 EDA 2016** |
| TERRANCE JONES | : | |

**OPINION**

CP-51-CR-0008269-2013 Comm. v. Jones, Terrance M.
Opinion



7922653281

**ANHALT, J.**

Appellant in the above-captioned matter appeals this Court's judgment regarding his conviction for Possession of a Firearm, 18 Pa.C.S.A. § 6105(a)(1) and related offenses. The Court submits the following Opinion in accordance with the requirements of Pa.R.A.P. 1925(a). For the reasons set forth herein, the Court holds that the judgment of conviction should be affirmed.

**PROCEDURAL HISTORY**

On June 9, 2013, police arrested and charged Appellant, Terrance Jones with numerous offenses stemming from a shooting. On November 25, 2015, following a jury trial, Appellant was convicted of Possession of a Firearm (F2), Carrying a Firearm Without a License (F3), Carrying a Firearm in Philadelphia (M1), Possessing an Instrument of Crime ("PIC") (M1), Simple Assault (M2) and Recklessly Endangering Another Person ("REAP") (M2). On January 28, 2016, this Court sentenced Appellant to an aggregate term of 6.5 – 17 years of incarceration.

Appellant filed a timely notice of appeal on April 11, 2016. On April 15, 2016, this Court ordered Appellant pursuant to Pa. R.A.P. 1925(b) to file with the Court a Concise Statement of Matters Complained of on Appeal. On May 6, 2016, Appellant filed a Motion for Extension of

time. On January 12, 2017, this Court again ordered Appellant pursuant to Pa. R.A.P. 1925(b) to file with the Court a Concise Statement of Matters Complained of on Appeal. On February 2, 2017, Appellant filed a Supplemental Statement of Errors Complained of on Appeal. Appellant raises the following issue on appeal:

1. The verdict of guilt was against the weight of the evidence for all of the crimes of which the defendant was convicted to the degree that such serious doubt is cast upon the validity of the defendant's conviction as to shock the conscience; to wit, taking into consideration all the evidence presented at trial, including exculpatory and also contradictory evidence as to, *inter alia*, the defendant's actions and locations at the time of the commission of the crimes, the actions and locations of another party that had the opportunity and motivation to commit the crimes, and the source of the shot that wounded the complainant, the evidence failed to prove by sufficient weight that it was the defendant who shot the complainant or otherwise committed the crimes of which he was convicted.[1]

## FACTUAL HISTORY

On June 8, 2013, Wayne Oliver attended a party across the street from his home on the 4800 block of North 7th Street in Philadelphia. Notes of Testimony (N.T.) 11/23/15 at 9. Appellant's brother, Marlon Jones "Marlo" and a bunch of other people that live on the block attended the party. *Id.* at 11. During the party, Mr. Oliver and Marlo got into an argument and Marlo threw a punch at Mr. Oliver. *Id.* at 14. As Mr. Oliver walked across the street to his house,

---

[1] Counsel notes that this supplemental statement is filed in response to the court's Rule 1925(b) order of January 12, 2017, apparently filed in response to counsel's request for an extension of time to file a supplemental statement of errors upon receipt of all necessary notes of testimony. Counsel notes that at the time of filing of this supplemental statement, counsel has received all outstanding notes of testimony, has reviewed those notes and is raising no additional claims of error beyond the claim raised in the original statement of errors filed on May 6, 2016.

2

Marlo followed him and threatened to shoot and beat him. *Id.* at 15. Mr. Oliver met Marlo in the middle of the street, punched him twice, got on top of him and "beat the hell out of him." *Id.* at 17. Mr. Oliver's son-in-law, Anthony, removed Mr. Oliver off of Marlo and walked him back up the block. *Id.* Anthony then directed Mr. Oliver back to his house. *Id.* at 19.

After about 10-15 minutes, Mr. Oliver came back outside on his porch and encountered Marlo's son. *Id.* at 20. Marlo's son asked Mr. Oliver who hit his dad and Mr. Oliver responded that he did. *Id.* at 21. Marlo's son then threw a punch at Mr. Oliver, jumped off his porch and ran back into the street. *Id.* Mr. Oliver got off his steps and began to fight Marlo's son. *Id.* at 22. Mr. Oliver then noticed Marlo's brother, Appellant, leaning on a car on the other side of the street. *Id.* at 22-23. As Mr. Oliver and Marlo's son were fighting, Marlo's son ran toward Appellant. *Id.* at 56. Mr. Oliver then ran toward Marlo and Appellant. *Id.* at 56-57. At this point, Mr. Oliver and Appellant are about three feet from each other. *Id.* at 57. Mr. Oliver tried to swing at Appellant as Appellant's "hand came up." *Id.* at 24. Appellant then shot Mr. Oliver once. *Id.* at 25. The bullet went through the top of his groin, was lodged in his leg and remains there to this day. *Id.* at 27. Anthony then picked Mr. Oliver up and carried him to his porch. *Id.* at 30. Mr. Oliver the stayed on the porch until the ambulance and the police arrived. *Id.* Mr. Oliver was then rushed to Einstein Medical Center. *Id.* at 31. Mr. Oliver told Detectives that Appellant shot him when approached at the hospital. *Id.* at 33-34.

Lawanda Oliver, Mr. Oliver's daughter, stated that her father limped into the house and yelled "that fat fucking T shot me."[2] N.T. 11/20/15 at 54. Tiara Oliver, also Mr. Oliver's daughter, witnessed her father and Marlo arguing face to face at 4821 N. 7th Street, the address of the party. *Id.* at 84. Marlo told her that her dad better leave tonight because he was going to kill

---

[2] "T" refers to Appellant, Terrance Jones.

3

him. *Id.* at 85. Tiara then witnessed her father and Marlo fight in the street. *Id.* at 87. At the end of the fight, Marlo was knocked to the ground and began to bleed from his mouth and head. *Id.* at 88. Tiara, who has medical assistant experience, attempted to aid Marlo. *Id.* at 88. Tiara then went back to the house and stood on her porch when she saw Appellant pull up in a red Corvette and Marlo's son pull up in a black van. *Id.* at 93. She then went into the house and believed that everything was over. *Id.* at 96. As she went back to her front door she heard one gun shot. *Id.* at 97. After Mr. Oliver was helped inside the house, Tiara looked outside and saw everybody trying to get out of the way. *Id.* at 98-99. Tiara witnessed Appellant get back into his car and Marlo's son get into his van and both pull away. *Id.* at 99-100. She then went back inside her house where her father screamed "T f-ing shot me." *Id.* at 102.

Detective Jeffrey Geliebter met with Mr. Oliver at 3:30 a.m. on June 9, 2013, at Einstein Hospital. N.T. 11/23/15 at 92. He showed Mr. Oliver a photo array to which he identified and circled the second picture from the left on the bottom row, a picture of Appellant. *Id.* at 91. Mr. Oliver indicated that Appellant was the man who shot him and that he was "a hundred percent sure he was looking at him when he was shot." *Id.* at 93. Detective Robert Hassel met with Mr. Oliver at Einstein Hospital and conducted an interview around 11:45 p.m. *Id.* at 108. Mr. Oliver told Detective Hassel that a man named "T" shot him, the brother of the man he was fighting. *Id.* at 110.

However, there are two versions of the events that unfolded the night of June 8, 2013. Marlo testified to his account of the evening. Belinda Moore and Appellant were carrying him into his house when he heard a gunshot. *Id.* at 156-158. However, Marlo's memory is hazy. He stated that he did not remember who was at the party or who was next door when he got to the party. *Id.* at 169. Marlo claimed that his memory of the events was better today than hours after it

4

happened. *Id.* at 175. Marlo reasoned that he was close to "blackout drunk" that evening. *Id.* at 173. Marlo, by his own admission, mentioned his memory was less than perfect. *Id.* at 182.

> **Q:** So I think we can all agree that your recollection of that night is fogged?
>
> **A:** Yeah, I'm not saying it's perfect, but I'm giving you the best answers I could give you.

*Id.* at 182-183. Belinda Moore, Marlo's wife, testified to a similar set of events. She also attended the party at 4821 N. 7th Street on June 8, 2013. *Id.* at 196. She stated that Mr. Oliver and her husband got into a physical altercation after hanging out and drinking all day. *Id.* at 198. As a result of the two fighting, Ms. Moore called the police, Appellant, and her nephew Derrick because none of the neighbors were helping break up the fight. *Id.* at 199. Appellant picked up Marlo off the ground and proceeded to carry him into the house. *Id.* at 201. As Ms. Moore was going in the house she heard what sounded like a gunshot. *Id.* So she, Marlo and Appellant rushed into the house. *Id.* at 202. She stated that as the gunshot went off, she was holding Marlo's one arm and Appellant was holding the other. *Id.* Derrick also testified that he helped take Marlo into the house. *Id.* at 229.

## DISCUSSION

Appellant contends that the guilty verdict was against the weight of evidence. Specifically, Appellant asserts that the evidence failed to prove by sufficient weight that it was Appellant who shot the complainant or otherwise committed the crimes of which he was convicted.

"The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). The Supreme Court of Pennsylvania in *Champney*

5

explained that an appellate court cannot substitute its judgment for that of the finder of fact. *Id.* Therefore, the court may only reverse the lower court if the verdict is so contrary to the evidence as to "shock one's sense of justice." *Id. citing Commonwealth v. Small*, 741 A.2d 666, 672–73 (Pa. 1999) (citations omitted). The Supreme Court has set forth the following standard of review for Appellant's claim that the verdict is against the weight of evidence and that he should be entitled to a new trial:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). (citations and quotation omitted). *See also Kaplan v. O'Kane*, 835 A.2d 735, 737 (Pa. Super. 2003). (holding "[t]he power to grant a new trial lies inherently with the trial court, and [the] appellate court will not reverse its decision absent a clear abuse of discretion or an error of law which controls the outcome of the case.").

The defendant in *Champney* claimed that the guilty verdict was against the weight of the evidence since the jury supposedly ignored important evidence in reference to the thoroughness of police investigation. *Champney*, 832 A.2d at 408. The Supreme Court of Pennsylvania in *Champney* explained that it was exclusively within the jury's province to weigh this evidence, and thus, the defendant's claim failed. *Id.* at 409.

6

Here, Appellant points to Marlo's and Ms. Moore's testimony as evidence that exculpates him from his conviction in connection with the shooting. Specifically, Appellant directs our attention to testimony that shows him carrying Marlo into his house as the shot was fired which proves that he was not the gunman. N.T. 11/23/15 at 156-158. However, there are many issues with Marlo's testimony. The jury was proper when it discounted the testimony of Marlo, a man who, by his own admission, did not have great memory. *Id.* at 182. Marlo, himself, used the term "blackout drunk." *Id.* at 173. The other time the jury heard that Appellant was carrying Marlo when the gunshot went off was from Ms. Moore. *Id.* at 201. Ms. Moore is Marlo's wife and therefore, Appellant's sister-in-law. *Id.* at 196. That relationship naturally raises questions as to her intentions to provide credible testimony. Since the jury was free to believe all, part or none of the evidence against Appellant outlined above, and similar to *Champney*, the jury was proper in believing Mr. Oliver's credible version of events and ignoring or discrediting Marlo's and Ms. Moore's version. That the jury convicted Appellant with evidence provided by Mr. Oliver, Lawanda and Tiara is not so contrary to the evidence that it would shock one's sense of justice. Therefore, the guilty verdict was not against the weight of evidence.

7

## CONCLUSION

After review of the applicable statutes, testimony, and case law, the verdict was not against the weight of evidence. Accordingly, this Court's decision should be affirmed.

BY THE COURT:

*Diana L. Anhalt*

DATE: March 22, 2017

DIANA L. ANHALT, J

8

**PROOF OF SERVICE**

     I hereby certify that on the date set forth below, I caused an original copy of the Judicial Opinion to be served upon the persons at following locations, which service satisfies the requirements of Pa.R.A.P. 122:

Mark Cichowicz, Esquire
Defender Association of Philadelphia
1441 Sansom Street
Philadelphia, PA 19102

Hugh Burns, Esquire
Philadelphia District Attorneys Office
Three South Penn Square
Philadelphia, PA 19107

Date: 3/22/17

By: _Diana L. Anhalt_
Diana Anhalt, Judge

9